IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

SEAN ROWELL,

                Plaintiff,                  OPINION AND ORDER

  v.

                                              20-cv-110-wmc

R. RICHARDSON,
BRANDON DROST,
H. MELLENBERGER and
K. SPLETTER,

                Defendants.

*Pro se* plaintiff Sean Rowell contends that prison officials at Stanley Correctional Institution retaliated against him in violation of the First Amendment and the Prison Rape Elimination Act after he complained and filed grievances about his sexual relationship with a Stanley employee. Specifically, the court granted Rowell leave to proceed on his retaliation claims against: (1) defendant Brandon Drost for moving him to a different unit, terminating him from his prison job, monitoring his telephone calls and refusing to transfer him to a different institution; and (2) defendants K. Spletter, H. Mellenberger, and R. Richardson for denying his request for a transfer after a Program Review Committee hearing addressed his inmate complaints. Presently, there are two matters before the court. First, defendants move for partial summary judgment, contending that Rowell failed to exhaust his administrative remedies for his retaliation claims against defendants Mellenberger, Spletter, and Richardson. (Dkt. #25.) Second, plaintiff Rowell seeks leave to proceed with new claims in a proposed amended complaint against Mario Canziani and Mellenberger (dkt. #38), which requires screening under 28 U.S.C. § 1915A.

For the following reasons, the court will grant defendants' motion for partial summary judgment and dismiss plaintiff's retaliation claims against Mellenberger, Spletter, and Richardson without prejudice. In addition, because Rowell's new allegations in his proposed amended complaint do not state a claim upon which relief can be granted against proposed defendants Mario Canziani or Mellenberger, Rowell may not proceed with these claims. In light of these rulings, however, the court will reset the dispositive motion deadline as set forth below.

OPINION

I. Exhaustion

Prisoners may not bring a federal claim about events in prison "until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). In other words, a prisoner must follow all of the prison's rules for completing its grievance process. *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). This includes: (1) compliance with instructions for filing an initial, administrative grievance, *Cannon v. Washington*, 418 F.3d 714, 718 (7th Cir. 2005); and (2) pursuing *all* available appeals from a denial of a grievance "in the place, and at the time, the prison administrative rules require," *Pozo*, 286 F.3d at 1025; *see also Burrell v. Powers*, 431 F.3d 282, 284-85 (7th Cir. 2005). Moreover, "[e]xhaustion is necessary even if . . . the prisoner believes that exhaustion is futile." *Dole v. Chandler*, 438 F.3d 804, 808-09 (7th Cir. 2006); *see also Thornton v. Snyder*, 428 F.3d 690, 694 (7th Cir. 2005) ("An inmate's perception that exhaustion would be futile does not excuse him from the exhaustion requirement.").

The purpose of this exhaustion requirement is to afford prison administrators a fair opportunity to resolve a prisoner's grievance without litigation. *Woodford v. Ngo*, 548 U.S. 81, 88-89 (2006). Thus, a prisoner's failure to exhaust constitutes an affirmative defense, which defendant must prove, *Davis v. Mason*, 881 F.3d 982, 985 (7th Cir. 2018); and at summary judgment, defendants must specifically show that: (1) there is no genuine dispute of material fact as to plaintiff's failure to exhaust; and (2) they are entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

In Wisconsin, prisoners must begin the exhaustion process by filing a grievance with an institution complaint examiner ("ICE") within 14 days after the incident giving rise to the grievance. Wis. Admin. Code § DOC 310.07(2). Among other requirements, a grievance must contain only one, clearly identified issue, as well as sufficient information for the Department of Corrections to investigate and decide the complaint. § 310.07(5)-(6). While the ICE may reject a grievance for a reason specified in § 310.10(6), the prisoner may still appeal the rejection to the appropriate reviewing authority within 10 days under § 310.10(10). If the ICE accepts the grievance, then a recommendation on the merits is made to the reviewing authority, who in turn renders a decision. §§ 310.10(12), 310.11. Next, if the ICE's recommendation is unfavorable, then the prisoner may appeal to the corrections complaint examiner ("CCE") within 14 days of the decision, unless good cause is shown for an untimely appeal. § 310.12(1), (6). Finally, the CCE makes a recommendation to the DOC Secretary, who will take final action on a prisoner's grievance. § 310.13.

Although classifications decisions are outside the scope of Wisconsin's Inmate Complaint Review System ("ICRS"), Wis. Admin. Code § DOC 310.06(3)(c), an inmate seeking administrative review of a classification decision may request review if the inmate believes the decision was based on erroneous information. § DOC 302.19(1). To properly seek review, the inmate must file a DOC-1292 form seeking administrative review of their initial classification or re-classification within 10 calendar days of the inmate's receipt of a decision regarding custody or placement. Once the director or the division administrator issues a written decision on the request for review, that decision is final. *Id.* §§ 302.19(5), (6).

The classification hearing that is the subject of this lawsuit occurred on September 26, 2019. During that hearing Rowell asked for a transfer to Racine Correctional Institution. However, the hearing committee unanimously recommended continued medium custody placement. The record of that hearing showed that Spletter, Mellenberger and Richardson were the committee members, but in fact, Drost participated in Mellenberger's place, apparently over Rowell's objection.

Rowell also submitted two inmate complaints against Drost, one before the hearing and one after. On August 5, 2019, Rowell submitted SCI-2019-14355, alleging that Drost retaliated against him for filing a PREA complaint before the scheduled hearing regarding Rowell's transfer request, which obviously could not serve to exhaust his administrative remedies as to any later claim against Spletter, Mellenberger or Richardson for the conduct or outcome of that hearing. Then, the day after the hearing, on September 27, Rowell submitted SCI-2019-16966, alleging that another inmate engaged in a campaign to cause

4

him psychological distress and asking for a lateral transfer.  In the same complaint, Rowell also complained that Drost failed to protect him from the harassment.  After the ICE interviewed Drost and dismissed that complaint, Rowell appealed but at no point did he mention anything about retaliation during the reclassification hearing one day earlier.

On October 8, 2019, Rowell did submit an inmate complaint alleging retaliation at the September 26 reclassification hearing.  When that complaint was returned to Rowell with instructions to submit a DOC 1292 form to request review of the decision, he also timely submitted a DOC 1292, alleging that the hearing was not fair or impartial because Drost was actually present instead of Mellenberger, even though the hearing documentation showed that Spletter, Richardson and Mellenberger presided over the hearing.  (*See* Ex. 505 (dkt. #28-3) 2.)  Specifically, Rowell objected to Drost's participation in the hearing because he had two inmate complaints pending about Drost, and despite failing to state that Spletter, Richardson or Mellenberger retaliated against him (or even that any of the three was aware of any inmate complaints he filed and denied his request for a transfer for that reason), Rowell's request for review was successful.  Moreover, because of this error, the matter was remanded for further hearing on January 24, 2020, to take place in March of 2020.  (*Id.* at 1, 4.)

Rowell then filed this lawsuit on February 6, 2020, and the rescheduled reclassification hearing took place on March 26, with Rowell renewing his request for a transfer to Racine.  This time, the committee was comprised of defendant Richardson and non-defendants Lewison and Dzimela, but they, too, unanimously recommended retaining Rowell in medium custody at Stanley.  On appeal, Rowell claimed that Richardson was

5

biased against him because of a federal lawsuit, but that appeal was denied as unsubstantiated.

Accordingly, defendants seek summary judgment as to Rowell's retaliation claims against Mellenberger, Spletter and Richardson since none of his submissions -- either in his inmate complaints or in his DOC-1292 requests for review -- alleged that any of these three defendants retaliated against him for filing inmate complaints.  The law is clear that to provide prison officials with an adequate opportunity to investigate a retaliation claim, an inmate must either explicitly allege retaliation or identify the protected conduct and the adverse action.  *See Price v. Friedrich*, 816 F. App'x 8, 10 (7th Cir. 2020) (unpubl.) (affirming district court's finding of non-exhaustion in circumstances in which "none of Price's grievances alerted the prison to [his] belief that his legal materials were destroyed in retaliation for grievances he had filed against Friedrich's colleague"); *Lockett v. Goff*, No. 17-cv-93-JDP, 2017 WL 4083594, at *2 (W.D. Wis. Sept. 13, 2017) (if an inmate does not "explain the protected conduct that caused the alleged retaliation," the complaint is "insufficient to put the state on notice of the nature of the wrong").

Rowell's arguments in opposition do not save these claims from dismissal.  In particular, he contends that he had a discussion with the ICE who directed him to submit a DOC-1292 form, which led him to believe that he did not need to continue using the ICRS to exhaust his administrative remedies.  Although Rowell is correct that he could not submit an inmate complaint to raise his concerns about the classification committee's September 2019 decision, he is incorrect that this communication relieved him of his obligation to raise concerns about retaliation in the DOC-1292 or in another inmate

6

complaint. Indeed, the DOC-1292 request for review form was probably the most appropriate place for Rowell to bring up his concern that Spletter, Richardson and Mellenberger also retaliated against him by denying his transfer request. Instead, Rowell limited his complaint to concerns about Drost's participation on the committee; thus, officials investigated just those concerns.

Accordingly, defendants have proven non-exhaustion as to these three defendants, and the court must grant defendants' motion for partial summary judgment and dismiss Rowell's retaliation claims against Mellenberger, Spletter and Richardson without prejudice. *See Ford v. Johnson*, 362 F.3d 395, 401 (7th Cir. 2004) (dismissal for failure to exhaust is always without prejudice). Thus, these defendants will be dismissed from this lawsuit.[1]

## II.   Proposed Amended Complaint

In his proposed amended complaint Rowell seeks to reinstate previously dismissed claims against Stanley Deputy Warden Mario Canziani or Mellenberger. As justification for not doing so sooner, Rowell maintains that through discovery, he has learned facts suggesting that Canziani and Mellenberger also retaliated against him in violation of his First Amendment rights. (*See* dkt. #39.) In particular, Rowell claims that Mellenberger knew about his May 2019 PREA complaint because she had investigated it. Rowell further alleges that Mellenberger communicated with Drost on August 6, allowing an inference

---

[1] Plaintiff can refile these claims if he can successfully exhaust them, but it is unlikely he will be able to do so timely, given that the relevant events occurred in 2019.

that the psychological services unit had recommended that Rowell be transferred, and that there was an inmate in another unit who trade places with Rowell. (*See* dkt. #38 at 5.) Rowell further alleges that Canziani would have known about his PREA complaint and used his authority to allow Rowell to be transferred to a different unit and terminated from his prison job.

To state a claim for retaliation, a plaintiff must: (1) identify a constitutionally protected activity in which he was engaged; (2) identify one or more retaliatory actions taken by defendant that would likely deter a person of "ordinary firmness" from engaging in the protected activity in the future; and (3) allege sufficient facts that would make it plausible to infer that plaintiff's protected activity was a motivating factor in defendant's decision to take retaliatory action. *Bridges v. Gilbert*, 557 F.3d 541, 555-56 (7th Cir. 2009) (citing *Woodruff v. Mason*, 542 F.3d 545, 551 (7th Cir. 2008)). Unfortunately for plaintiff, the allegations in the proposed amended complaint do not state a retaliation claim against either Mellenberger or Canziani.

In particular, Rowell does not allege that Canziani was involved in the discussions about his movement, and Canziani cannot be held liable by virtue of his supervisory position alone. *Burks v. Raemisch*, 555 F.3d 592, 593-94 (7th Cir. 2009). As for Mellenberger, although she knew about Rowell's PREA complaint, which is certainly protected conduct, Rowell's allegations do not support a reasonable inference that Mellenberger took an adverse action against him. Rather, her involvement in transferring Rowell was limited to communicating to Drost that there was space in a unit for Rowell, and that the psychological services had agreed that he should move to a different unit.

Rowell does not suggest that Mellenberger providing this information had any ramifications on him other than his placement consistent with psychological services' recommendation. Moreover, her involvement is distinguishable from Drost's, who is alleged to have transferred him, terminated him from his prison job, required him to take a laundry job, monitored his telephone calls, and refused to transfer him to a different institution.

At screening, the court concluded that the combination of those three factors was sufficiently adverse to deter a prisoner of reasonable firmness from submitting a PREA complaint again. (*See* dkt. #13, at 7-8.) However, Mellenberger's much more limited involvement in alleging facilitating Rowell's movement to a different unit is *not* sufficiently adverse to support a retaliation claim. *See Holleman v. Zatecky*, 951 F.3d 873, 881-82 (7th Cir. 2020) (commenting that a prison transfer that "upsets a prisoner's accustomed lifestyle and deprives him of human connections, job stability, and a familiar environment" is not sufficiently adverse to qualify as retaliation). Therefore, Rowell may not proceed on any new claims in this lawsuit.

ORDER

IT IS ORDERED that:

1) Defendants' motions for summary judgment for failure to exhaust administrative remedies (dkt. #25) is GRANTED and plaintiff's retaliation claims against defendants Mellenberger, Spletter, and Richardson are DISMISSED without prejudice.

2) At the close of this case, the clerk of court is directed to enter judgment in Mellenberger's, Spletter's, and Richardson's favor.

3) Plaintiff is DENIED leave to proceed on any new claims or defendants brought in his amended complaint.

4) The dispositive motion deadline is now October 6, 2023.

Entered this 24th day of July, 2023.

> BY THE COURT:
>
> /s/
>
> _____
> WILLIAM M. CONLEY
> District Judge